USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _7/10/20_____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | |
|---|---|
| **CANFIELD et al.,** | : |
| | : |
| **Plaintiffs,** | : |
| -against- | : |
| | : |
| **SS&C TECHNOLOGIES HOLDINGS, INC., et al.,** | : |
| | : |
| **Defendants.** | : |
| | : |
| | : |

**1:18-cv-08913(ALC)**

-------------------------------------------------------------x

-------------------------------------------------------------x

| | |
|---|---|
| **MENDON, et al.,** | : |
| | : |
| **Plaintiffs,** | : |
| -against- | : |
| | : |
| **SS&C TECHNOLOGIES HOLDINGS, INC., et al.,** | : |
| | : |
| **Defendants.** | : |
| | : |
| | : |

**1:18-cv-10252 (ALC)**

**OPINION AND ORDER**

-------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Before the Court is Defendants' motion to disqualify Plaintiffs' counsel in these two

related actions—*Canfield et al v. SS&C Technologies Holdings, Inc. et al*, and *Mendon et al v.*

*SS&C Technologies Holdings, Inc. et al*—as well as in pending arbitration proceedings in

Missouri. For the reasons that follow, Defendants' motion with respect to the *Canfield* and

*Mendon* actions is GRANTED. Additional briefing is required to rule on the motion with respect

to Counsel's representation in the arbitration proceedings.

# BACKGROUND

## I. All Related Cases

Before delving into the facts specific to the instant motion, it is necessary to provide an overview of the procedural history of these and related actions, as it is complex.

There are four related cases pending before this Court and arbitration proceedings pending in the Western District of Missouri concerning the facts at issue here. In three of the actions before this Court—*Ferguson*, *Canfield,* and *Mendon*—the named Plaintiffs are current or former employees of DST Systems, Inc., now SS&C Technologies Holdings, Inc. They are also participants in the DST Systems, Inc., 401(k) Profit Sharing Plan, "an individual account or defined contribution pension plan…subject to the provisions of ERISA." (Canfield Compl. ("CC") at ¶ 3; Mendon Compl. ("MC") at ¶¶ 1, 8–9). The Advisory Committee of DST Retirement Plan is the plan's named fiduciary. (CC at ¶ 15). Ruane, Cunniff & Goldfarb & Co., Inc. is the investment manager of DST's Master Trust, in which Plaintiffs allege "a portion of the Plan's assets are invested…" (CC Compl. at ¶ 3).

In *Ferguson*, Plaintiffs brought suit against Ruane, DST or SS&C, The Advisory Committee of the Plan, and The Compensation Committee of the DST Board of Directors as well as over a dozen of its named members. (Ferguson Compl.). In *Canfield* and *Mendon*, Plaintiffs raise claims against SS&C or DST, Ruane, The Advisory Committee of the Plan, including its "individual members," and The Compensation Committee and its individual members, and John Does 1–20. (CC at ¶ 1; MC. at ¶ 1). Plaintiffs in these three actions claim that Defendants violated ("ERISA") through several breaches of the fiduciary duty they owed to Plan participants, and as a result of this breach, Plaintiffs' Plan accounts sustained losses.

Claimants asserted virtually identical claims against Defendants in arbitration proceedings in the Western District of Missouri. (Payne Compl. ("PC") at ¶ 45). Ruane alleges that in their arbitration demands, claimants improperly purported to assert both individual claims and prohibited claims on behalf the plan. (*Id.* at ¶ 47). Ruane filed an action in the Western District of Missouri to enjoin claimants from prosecuting collective or representative claims and from prosecuting the arbitrations until the Southern District of New York determined whether the plaintiffs in *Ferguson* represent the entire plan. (*Id.* at ¶ 49). Claimants moved to dismiss the action, representing that the inclusion of the collective claims was a mistake that they now disavow. (*Id.* at ¶ 52). Based on these representations, Ruane ultimately voluntarily dismissed its claims without prejudice, and the claimants' revised demands are pending in arbitration. (*Id.* at ¶¶ 52, 54, 56).

In *Scalia v. Ruane, Cunniff & Goldfarb, Inc. et al*, the Secretary of Labor sued Ruane, the DST parties, sixteen members of the former DST Plan Advisory Committee and Compensation Committee's Board of Directors, alleging that Defendants "caused the Plan and its participants to suffer harm" and seeking an order requiring Defendants to "restore to the Plan and its participants all losses caused." (Scalia Compl. ("SC") at ¶¶ 59, 63).

Finally, in *Ruane v. Payne*, Ruane seeks a declaratory judgement providing that "multiple representatives of the participants and Plan cannot at the *same* time seek recovery in multiple forums for the *same* harm to the *same* Plan assets caused by the *same* alleged breaches of fiduciary duty." (PC at ¶ 61). Additionally, Ruane seeks injunctive relief "enjoining the arbitrations until this Court can determine whether *Ferguson* or *Scalia* represents all 10,000 Plan participants or only the approximately 500 who opted out of the Arbitration Agreement." (*Id.*)

## II. The Instant Motion to Disqualify

Defendants in the *Mendon* and *Canfield* actions now move to disqualify Plaintiffs'
counsel. Plaintiffs in these cases are represented by The Klamann Law Firm and Kent, Beatty &
Gordon, LLP. The Klamann group also represents Percy Payne, the Defendant in the *Payne*
action. Conversely, the law firms Shepard, Finkelman, Miller & Shah, LLP, Kirby McInerney
LLP, and the Law Office of Heidi A. Wendel, PLLC represent Plaintiffs in the *Ferguson* action.

On December 5, 2019, DST Defense counsel in the *Mendon* and *Canfield* actions notified
the court that The Klamann group also represented three, former members of the Plan's Advisory
Committee—Kenneth Hager, Thomas McDonnell, and Joan Horan—in arbitration proceedings
against DST and Ruane in the Western District of Missouri. (*Canfield* ECF No. 27; *Mendon* ECF
No. 28). Defendants assert that Plaintiffs in *Mendon* and *Canfield* sue the Advisory Committee
of the Plan and its *individual members*, which include Hager, McDonnell, and Horan. In other
words, Defendants argue that The Klamann Group is bringing suit against its own clients in
*Canfield* and *Mendon*, which amounts to a concurrent conflict of interest warranting
disqualification. With the court's permission, Defendants filed a motion to disqualify on the
above basis on February 18, 2020. (*Canfiled* ECF Nos. 34–35; *Mendon* ECF Nos. 33–34).

### LEGAL STANDARD

"'District courts have broad discretion to disqualify attorneys, but it is a drastic measure
that is viewed with disfavor in this Circuit' due to the delay it involves and its potential for
misuse as a litigation tactic." *Mura v. Thomas*, No. 19 CV 8699, 2020 WL 2086039, at *3
(S.D.N.Y. Apr. 30, 2020) (quoting *Ritchie v. Gano*, No. 07 Civ. 7269, 2008 WL 4178152, at *2
(S.D.N.Y. Sept. 8, 2008) (internal quotation marks omitted)). The decision "requires balancing
'the client's right to select counsel of his choice against the need to maintain the integrity and

high standards of the legal profession.'" *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 267 (E.D.N.Y. 2015) (quoting *Nordwind v. Rowland*, 584 F.3d 420, 435 (2d Cir. 2009)). "However, 'any doubt [with respect to whether disqualification should be ordered] is to be resolved in favor of disqualification.'" *Bell v. Ramirez*, No. 13 Civ. 7916, 2017 WL 4296781, at *1 (S.D.N.Y. Sept. 26, 2017) (quoting *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975)) (internal citation omitted) (alteration in original).

In deciding disqualification motions, courts may look to "the American Bar Association (ABA) and state disciplinary rules," however "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video, Inc.*, 409 F.3d 127, 132 (2d Cir. 2005). Disqualification is only appropriate where "an attorney's conduct tends to taint the underlying trial[.]" B*oard of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (internal quotation marks omitted).

"The standard for disqualification depends on whether the representation is concurrent— meaning the lawyer represents two or more current clients at the same time—or successive— meaning the attorney represents a current client against, or whose interests are adverse to those of, a former client." *Tour Technology Software, Inc. v. RTV, Inc. et al.,* No. 17 CV 5817, 2018 WL 3682483, at *3 (E.D.N.Y. Aug. 2, 2018). The Second Circuit considers concurrent representation *per se* improper. *Hempstead Video*, 409 F.3d at 133. An attorney engaging in concurrent representation will be disqualified unless he or she can "show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation." *Id.* (emphasis in original). "[T]his is 'a burden so heavy that it will be rarely met.'" *GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (*quoting Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 (2d Cir. 1981)).

**DISCUSSION**

**I. Concurrent Representation**

The Klamann Group argues that Hager, McDonnell and Horan are not among the individual Advisory Committee members Plaintiffs are suing in *Canfield* and *Mendon*, thus, the arbitration claimants' and Plaintiffs' interests do not conflict. (ECF No. 39 at 7, 20). Horan served on the Committee until December 6, 2010, McDonnell until April 3, 2012, and Hager until October 21, 2013. (ECF No. 39 at 13 n.1). The *Canfield* and *Mendon* Plaintiffs, the Klamann Group argues, are only suing for breaches in fiduciary duty that occurred after 2013, thus, Horan, McDonnell, and Hager are not being sued. (*Id.* at 12–13). Accordingly, the Klamann Group argues that any potentially adverse interests are hypothetical, and not severe enough to warrant disqualification. I disagree. From the plain language of Plaintiffs' complaints, at least Hager and McDonnell, and possibly Horan are defendants in the *Mendon* and *Canfield* actions. This type of conflict poses a severe risk of "trial taint."

By the plain text of the *Canfield* and *Mendon* complaints, Plaintiffs allege that Defendants DST and the Advisory Committee breached their fiduciary duties prior to 2014. For instance, the complaints allege that "[b]y retaining Defendant Ruane, Defendants failed to discharge their duty to select and retain an investment manager solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing benefits to Plan participants and beneficiaries." (MC at ¶ 42; CC at ¶ 45). Additionally, the complaints allege that "while acting as Plan fiduciaries[,]" Defendants allowed Ruane to charge the Plan a "grossly and objectively excessive" fee. (MC at ¶ 43; CC at ¶ 46). "A prudent fiduciary under like circumstances would have negotiated an annual feel of far less than one percent (1%)." (*Id.*)

6

Defense counsel submitted evidence obtained during discovery that Ruane has served as the Plan's Investment Manager since 1973. (Recher Decl. Exs. A, B).

Additionally, Plaintiffs take issue with the Plan's investment in Valeant Pharmaceuticals. The Complaint alleges that Valeant was unsuitable for an investment in a retirement account" as Valeant pursued a "a particularly risky" "aggressive growth by acquisition strategy since at least 2008." (CC at ¶¶ 33–34, 37; MC at ¶¶ 31, 34). Specifically, the complaints state that "Defendants knew or should have known by at least 2011 that Valeant was a particularly risky and imprudent investment." (CC at ¶ 39; MC at ¶ 36).

Based on these examples, it is evident that Plaintiffs intended to sue DST and the Advisory Committee for fiduciary breaches they committed at least in 2011, potentially as early as 1973. At least Hager and McDonnell were on the Committee in 2011. The Klamann group is suing its own clients, thereby jeopardizing the undivided loyalty it owes to Plaintiffs. The risks posed by this scenario are endless and exemplified by Counsel's arguments in its opposition brief. The Klamann Group argues that its allegation related to Ruane's fee was provided for motivational context as to later actionable breaches and that "[n]either the Plaintiffs nor the Arbitration Claimants…seek damages against DST for having originally retained Ruane." (ECF No. 39 at 13). Additionally, Counsel insists that Plaintiffs and Arbitration Claimants allege that DST and the Committee breached their fiduciary obligations only by retaining Ruane as Investment Manager after *2014*. It was in 2014, Counsel asserts, when the DST and the Committee should have been aware that the Plan's investments were overly concentrated in Valeant, amounting to a breach of Ruane's duties. (*Id.* at 14–15). As for the contradictory allegation appearing in both the *Canfield* and *Mendon* complaints—that "Defendants knew or should have known by at least 2011 that Valeant was a particularly risky and imprudent

investment"—The Klamann Group contends that this was a mere typo. (*Id.* at 15). The rest of the complaint, Counsel highlights, clearly focuses on post-2013 conduct. (*Id.*)

Given the severe conflict posed by the initial complaints in these actions, the Court cannot assess whether Counsel acts in good faith, or improperly seeks to limit the scope of Plaintiffs' actions simply to preclude liability against his arbitration clients. "When determining whether a…conflict due to concurrent representation merits disqualification, courts look to the point in time at which the conflict arose, not when the litigation is filed." *Troika Media Group, Inc. v. Stephenson*, No. 19 Civ. 145, 2019 WL 5587009, at *5 (S.D.N.Y, Oct. 30, 2019). The reason is to prevent attorneys from "convert[ing] a present client into a 'former client' by choosing when to cease to represent the disfavored client." (*Id.*) (internal quotation marks omitted). However, the same principle applies here to prevent an attorney from amending a complaint to erase the appearance of concurrent representation. By the plain terms of the originally filed complaints, Plaintiffs sued their Counsel's arbitration clients.

## II. The Klamann Group's Burden

Plaintiffs' Counsel has not satisfied his high burden of establishing "that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation" despite this concurrent conflict. *Hempstead*, 409 F.3d at 133 (emphasis in original). Counsel raises three arguments as to why I should deny Defendants' disqualification motion even upon a finding that there is a concurrent conflict. The first is that Defendant DST's unreasonable delay in making this motion raises a reasonable inference either that DST did not honestly believe that a conflict exists, or that the motion is nothing but a strategic tool to deprive Plaintiffs of their chosen counsel. (ECF No. 39 at 25). Defendants' motivations for bringing the motion do not support the conclusion that Plaintiffs' counsel will not still face a conflict in loyalties. Defendants' motives

and tactics possibly may be improper, but that finding does not remedy the concurrent representation problem at issue. Plaintiffs cite one case from this District in which the court noted that a waiver may be presumed if a motion to disqualify is not brought within a reasonable time. (*Id.*) (quoting *Siverio v. Lavergne*, No. 86 Civ. 6584, 1989 WL 31531, at *2 (S.D.N.Y. Mar. 29, 1989). However, the court in that case found that there had not been an unreasonable delay and noted that the cases in which an unreasonable delay had been found typically involved delays of "at least several years between the time the moving party learned of the conflict and the time the disqualification motion was asserted." *Siverio*, 1989 WL 31531, at *2.

Counsel's second argument is that his clients—both Plaintiffs and the arbitration claimants—would be severely prejudiced by their disqualification. (ECF No. 39 at 26–27). However, this argument again, does not satisfy Counsel's required burden.

Third, Counsel contends his clients have provided informed consent to joint representation, thereby waiving any conflict. However, this consent needed to be "obtained prior to [Counsel's] undertaking representation of adverse interests, not in response to a motion to disqualify." *Anderson v. Nassau Cty. Dept. of Corrections*, 376 F. Supp. 2d 294, 299–300 (E.D.N.Y. 2005) (citing *Discotrade Ltd. v. Wyeth-Ayerst Intern., Inc.*, 200 F.Supp.2d 355, 360 (S.D.N.Y. 2002)).

Based on the above, Counsel has not met its burden and disqualification in the face of this concurrent representation is warranted.

## CONCLUSION

Defendants' motion to disqualify as to the *Canfield* and *Mendon* actions is GRANTED. The parties should submit additional briefing by July 24, 2020 as to whether this Court has jurisdiction over Defendants' disqualification motion as it relates to the Missouri arbitration

proceedings. Related to this issue is The Klamann Group's representation of Percy Payne in *Ruane Cunniff & Goldfarb, Inc. v. Payne et al*. DST is not a party to this action, but the Klamann Group and Ruane should both submit briefing by July 24, 2020, as to whether The Klamann Group's representation in this matter remains proper.

Further, the Court is aware that Plaintiffs in *Mendon* and *Canfield* have filed notices voluntarily dismissing their claims against Ruane pursuant to Fed. R. Civ. P. 41(a)(1). The Court is also in receipt of Ruane's letter informing the Court that it intends to dismiss *Payne* in its entirety pursuant to Fed. R. Civ. P. 41(a)(2). Because Plaintiffs' Counsel has been disqualified in the *Mendon* and *Canfield* actions, I cannot sign off Plaintiffs' Rule 41(a)(1) dismissal.

**SO ORDERED.**

**Dated:**  July 10, 2020

New York, New York                    **ANDREW L. CARTER, JR.**
                                       **United States District Judge**