USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  March 17, 2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | |
|---|---|
| CANFIELD et al, | : |
| | : |
| Plaintiffs, | : |
| -against- | :   1:18-cv-8913 (ALC) |
| | : |
| SS&C TECHNOLOGIES HOLDINGS, INC. et al, | : |
| Defendants. | : |

-------------------------------------------------------------x

| | |
|---|---|
| MENDON ET AL | : |
| | : |
| Plaintiffs, | : |
| -against- | :   1:18-cv-10252 (ALC) |
| | : |
| | :   **OPINION AND ORDER** |
| SS&C TECHNOLOGIES HOLDINGS, INC. et al, | : |
| Defendants. | : |

-------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

    Familiarity with the facts of these matters is presumed, and here, the court recites only those facts necessary to resolve the instant motion.

    On July 10, 2020, the court granted Defendants' motion to disqualify Plaintiffs' counsel, the Klaymann Group, in these two related actions. (ECF No. 49). These cases are ERISA actions in which Plaintiffs are current or former employees of Defendant DST Systems, Inc., now SS&C

1

Technologies Holdings, Inc., and participants in the DST Systems, Inc., 401(k) Profit Sharing Plan. (*Id.* at 2). Plaintiffs in these actions raised claims against DST; Ruane, Cunniff & Goldfarb & Co., Inc., the investing manager of the DST's Master Trust, in which Plaintiffs allege a portion of the Plan's assets are invested; The Advisory Committee of the Plan, including its individual members; and the Compensation Committee of the Plan. (*Id.*) Plaintiffs allege Defendants violated ERISA through several breaches of the fiduciary duty they owed to the Plan's participants, and as a result, Plaintiffs' Plan accounts sustained losses.

In addition to representing Plaintiffs in these two actions, the Klaymann Group also represented several individuals pursuing actions against DST and Ruane in arbitration proceedings. Three of those arbitration claimants are former members of the Plan's Advisory Committee. All three claimants left their position on the Committee by mid-October of 2013. (*Id.* 5–6). However, DST argued that there was a concurrent conflict of interest. The Klaymann Group argued that there was no conflict as Plaintiffs were suing for breaches in fiduciary duties that occurred post-2014. However, DST identified several places in Plaintiffs' complaints containing allegations of misconduct by Defendants prior to October 2013. The Klaymann Group asserted that many of these allegations were typos.

The court concluded that, "[f]rom the plain language of Plaintiffs' complaints" at least two of the former Advisory Board members represented by the Klaymann Group were sued in the *Canfield* and *Mendon* Plaintiffs' initial complaints. Finding that this concurrent representation posed a severe risk of trial taint, the court disqualified the Klaymann Group. (*Id.* 9–10).

The Klaymann Group filed the instant motion for reconsideration, which the court now DENIES.

**LEGAL STANDARD**

"A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation omitted). Where a movant seeks only to present "the case under new theories" or take "a second bit at the apple," a motion for reconsideration should be denied. *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "This standard is strict because 'reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Seoul Viosys Co., Ltd. V. P3 Int'l Corp.*, No. 16-cv-6276, 2019 WL 3858621, at *1 (S.D.N.Y. Aug. 16, 2019) (internal quotation marks omitted).

**DISCUSSION**

The Klamann Group's Motion rests on three arguments: (1) The court did not apply the correct legal standard; (2) overlooked important facts; and (3) new evidence warrants a reversal.

The Klamann Group cites law from this District holding that "disqualification is appropriate only if there is a significant risk that an attorney's conduct will taint the trial," *Sumitomo Corp. v. J.P. Morgan & Co.*, No. 99 Civ. 4004, 2000 WL 145747, at *3 (S.D.N.Y. Feb. 8, 2000), a determination which requires a "painstaking analysis of the facts of a case." *Akagi v. Turin Hous. Dev. Fund Co.*, No. 13 Civ. 5298, 2017 WL 1076345, at *2 (S.D.N.Y. Mar. 22, 2017); (ECF No. 62 at 2). The Klaymann Group argues the court failed to adhere to this standard by limiting its analysis to the complaint and neglecting to perform the required analysis of the case as clarified by two years of discovery and other litigation. (*Id*. at 4). Additionally, the Klamann Group

3

argues that the court drew inferences and resolved ambiguities in DST's favor. *Id.* The Klaymann Group then proceeds to argue that the facts of the case indicate that there was no risk of taint.

The Klaymann Group is correct in its recitation of the disqualification standard—no matter what the type of conflict alleged, "a court should disqualify an attorney 'only if '[his] conduct tends to taint the underlying trial.'" *Akagi v. Turin Housing Development Fund Co., Inc.*, 2017 WL 1076345, *10 (Mar. 22, 2017) (alterations in original) (quoting *GSI Commerce Solutions, Inc. v. Babycenter L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (quoting *Board of Ed. V. Nyquist,* 590 F.2d 1241, 1246 (2d Cir. 1979)). In other words, "[t]he appearance of impropriety alone does not warrant disqualification." *Id.* (alteration in original) (quoting *Rotherberg v. Phil's Main Roofing, LLC*, No. 14 Civ. 10195, 2016 WL 2344882, at *2 (S.D.N.Y. May 2, 2016) (quoting *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 376 F. Supp. 2d 426, 428 (S.D.N.Y. 2005)).

That being said, the Klamann Group ignores the fact that where the type of conflict at play is prima facie improper concurrent representation, the burden shifts, and it becomes "incumbent upon the attorney to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation. [The Second Circuit has] noted that this a burden so heavy it will rarely be met." *Cohen v. Strouch*, 2011 WL 1143067, *2 (S.D.N.Y. Mar. 24, 2011) (alteration in original) (quoting *GSI Commerce Solutions, Inc.*, 618 F.3d at 209).

In the original complaint filed in this case, the Klaymann Group sued clients it was then and is still representing in arbitration proceedings. The Klaymann Group argued that it sued these clients accidentally due to several typographical errors and therefore, that no concurrent representation problem will exist after an amendment to the original complaint. As the court noted its disqualification opinion, however, permitting such an amendment raises concerns that counsel

4

seeks to limit the scope of Plaintiffs' actions to protect the interests of its arbitration clients, and thus, is not acting within Plaintiffs' best interests. (ECF 49 at 8).

In its motion for reconsideration, the Klaymann Group explains why this amendment would not hurt, but in fact, would benefit Plaintiffs in this case. The Klamann Group points out that encompassing pre-2014 Plan conduct into its theory of liability would hurt all clients and help DST, which argues that the Plan performed excellently pre-2014. According to documents submitted by the Klaymann Group from the arbitration proceedings, DST's expert reported finding no reliable basis to conclude that plan participant plaintiffs suffered economic losses because of the Plan's investment strategies or "conduct beginning on or after April 2010" and through 2016 when Ruane directed the [Plan] to make its first purchase of Valeant shares." (ECF No. 58-3 ¶¶ 21, 26). However, it is clear from these documents, that the arbitration claimants disputed this expert's assessment, alleging that they were damaged by Defendants' pre-2014 decisions, and that, for instance, Defendants "knew or should have known by at least 2011 that Valeant was a particularly risky and imprudent investment." (I*d.* ¶ 27). This allegation is identical to an allegation made in Plaintiffs' original complaint. (ECF No. 1 ¶¶ 27, 28).

What the documents the Klaymann Group submitted show is that in DST's opinion, the Plan's and its fiduciaries' pre-2014 conduct led to no economic losses. However, this does not assure the court that DST's arbitration position is correct and it is frivolous for Plaintiffs' to pursue claims based on this earlier conduct. The fact remains that, if the Klaymann Group remained counsel in these cases, the *Canfield* and *Mendon* Plaintiffs would give up claims that they initially felt were worth pursuing. If these claims have merit, there would be significant taint to further proceedings in allowing the Klaymann Group to remain on the cases. The Klaymann Group has not carried its heavy burden of convincing the court that no such taint would exist.

The Klaymann Group also submitted new evidence it argues establishes that DST Defendants' misconduct began after 2014—an arbitrator in one of the related arbitrations determined that DST was jointly and severally liable under ERISA for all of Claimant's losses calculated on how the Plan actually performed versus how it would have performed had it been prudently invested using the S&P 500 as the benchmark from May 29, 2015 onward." (ECF No. 61 at 7). Again, while this finding by the Arbitrator may be supportive of DST's and now the Klaymann Group's position on the relevant time period, based on the largely undeveloped factual record before me, I cannot reach the conclusion that Plaintiffs received non-tainted advice regarding whether it is in their best interest to abandon the pre-2014 claims they originally sought to pursue.

The other new evidence the Klaymann Group submits is that it obtained a settlement agreement with Ruane on behalf of several of its arbitration clients. This settlement agreement, submitted for in-camera review in a related case, was purportedly joined by Plaintiffs in these two cases. (ECF No. 61 No. 12). The Klaymann Group does not explain, and the court does not see how this new evidence supports the reconsideration motion.

## CONCLUSION

For the reasons provided above, the Klaymann Group's motion for reconsideration is DENIED. (ECF Nos. 59, 60.) Additionally, the Court grants the following motions to seal. *Canfield*, 18cv8913 (ECF Nos. 39, 51, 56, 67); *Mendon*, 18cv10252 (ECF Nos. 36, 38, 50, 55, 66.)

**SO ORDERED.**

**Dated:   March 17, 2021**
**         New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**